In Re ONEIDA MOTOR FREIGHT, INC., Debtor.

ONEIDA MOTOR FREIGHT, INC., Debtor, and Delta Traffic Service, Inc., Plaintiffs,

v.

FELSWAY CORPORATION, Defendant.

ONEIDA MOTOR FREIGHT, INC., Debtor, and Delta Traffic Service, Inc., Plaintiffs,

v.

C & A WALLCOVERINGS, INC., formerly known as Imperial Manufacturing Company, etc., Defendant.

ONEIDA MOTOR FREIGHT, INC., Debtor, and Delta Traffic Service, Inc., Plaintiffs,

v.

The ORMOND SHOPS, INC., Defendant.

Bankruptcy No. 85–03606.
Adv. Nos. 87–0513, 87–0661 and 87–0527.

United States Bankruptcy Court, D. New Jersey.

Oct. 19, 1987.

Klinger, Nicolette, Mavroudis & Honig, P.C. by Richard B. Honig, Oradell, N.J., for debtor/plaintiff, Oneida Motor Freight, Inc.

Sims, Walker & Steinfeld, P.C. by Joseph L. Steinfeld, Jr., Washington, D.C., for plaintiff, Delta Traffic Service, Inc.

Slade & Pellman by Linda Gerstel, New York City, and Bursik, Kuritsky & Giasullo by David H.E. Bursik, West Orange, N.J., for defendant, Felsway Corp.

Kalb, Friedman & Siegelbaum, Roseland, and Verner Liipfert, Bernhard, McPherson and Hand, Chartered by Mark J. Andrews,

Washington, D.C., for defendant, C & A Wallcoverings, Inc.

Bendit, Weinstock & Sharbaugh by James F. Keegan, West Orange, N.J., and Moore, Berson, Lifflander, Eisenberg & Mewhinney by Larsh B. Mewhinney, New York City, for defendant, The Ormond Shops, Inc.

## OPINION

WILLIAM F. TUOHEY, Judge.

The above three adversary matters involve similar underlying facts. In each adversary matter the defendants have moved before this Court seeking to have the Court abstain from hearing the within adversary complaint, or in the alternative the dismissal of the complaint, or in the alternative for the entry of a stay and referral of the dispute for further hearing before the Interstate Commerce Commission. Oral argument was heard in all these cases at the same time, all defendants having mutually adopted the argument of one another.

Based upon the factual submissions put forth by the parties and based upon the argument of counsel, the Court makes the following findings:

1. On July 10, 1985, Oneida Motor Freight, Inc. ("Oneida") filed a voluntary petition for reorganization pursuant to Chapter 11 of the United States Bankruptcy Code.

2. On or about October 8, 1985, Oneida entered into an agreement with co-plaintiff, Delta Traffic Service, Inc. ("Delta") whereby Delta would collect on behalf of the debtor the then existing accounts payable of Oneida and would audit Oneida's freight bills.

3. Oneida is, and was at all times hereinafter mentioned, a corporation duly existing under the laws of the State of New York authorized to do business in the State of New Jersey.

4. Oneida was a motor common carrier operating in interstate and intrastate com-

merce pursuant to authority issued by the Interstate Commerce Commission (ICC) and various state regulatory agencies.

5. On October 30, 1985, the United States Bankruptcy Court for the District of New Jersey entered an order approving Oneida's retention of Delta Traffic for the purposes of auditing Oneida's freight bills within the three year period prior to July 10, 1985. The specific duties of Delta encompassed a determination as to whether or not the freight bills during the said period had been properly rated according to the tariffs filed by Oneida with the ICC and various state regulatory agencies.

6. The Court specifically finds that Oneida operated as a motor common carrier and that each of the defendants did tender freight to said carrier in the normal course of business.

7. Each defendant asserts herein that in the normal course of business at the conclusion of the delivery of the merchandise in question, Oneida submitted bills to the various defendants for the trucking services performed. For purposes of this motion the Court accepts the representation of the defendants that said initial bills were all paid in the ordinary normal course of business.

8. Oneida in the three adversary complaints before the Court seeks undercharges which it states are due to Oneida from the individual defendants based upon their failure to pay the published tariff rate for the freight services rendered:

(a) Oneida and Delta seek the sum of $59,429.25 from defendant C & A Wallcoverings, Inc., et al.

(b) Oneida and Delta seek the sum of $44,592.75 from defendant The Ormond Shops, Inc.

(c) Oneida and Delta seek the sum of $37,825.29 from defendant Felsway Corporation.

9. Plaintiff Oneida asserts, and for the purposes of this motion the Court accepts its representation, that Oneida has filed numerous adversary complaints asserting motor carrier undercharges. Oneida asserts that one million dollars worth of said complaints are currently on file before the United States Bankruptcy Court for the District of New Jersey and that approximately three million dollars in claims are pending in other jurisdictions. Thus, Oneida asserts that it is owed a total of 4 million dollars in shipper undercharges.

10. This Court further notes that it has currently on its docket 107 adversarial complaints wherein Oneida and Delta are the plaintiffs.

11. Oneida asserts in its brief that the majority of the adversary proceedings pending in this Court wherein Oneida is the plaintiff are based on freight bills on which the statute of limitations was to expire on July 11, 1987, pursuant to the provisions of Bankruptcy Code Section 11 U.S.C. § 108. It is asserted by Oneida that all of the adversary matters were filed prior to the July 11, 1987 bar date; Oneida asserts, however, that should this Court dismiss the said complaints, the debtor Oneida herein, will be time barred from asserting its causes of action.

### Withdrawal of Reference

█ Both plaintiffs and defendants in their arguments as alternative relief have suggested that this Court consider a withdrawal of the reference [1] of this matter pursuant to 28 U.S.C. § 157(d). This Court finds that it does not have jurisdiction to consider a motion to withdraw the general reference of this matter to the United States District Court. By the express terms of Section 157(d) as well as the Order of Reference dated July 23, 1984, it is the district court and the district court alone that may withdraw the reference of any

1. On July 23, 1984, Chief Judge Clarkson Fisher, in light of the enactment of the "Bankruptcy Amendments and Federal Judgeship Act of 1984," entered a standing order in the District Court. By the terms of the standing order every and all cases under Title 11 of the United States Code shall be referred to the Bankruptcy Court.

matter pending before this Court. *Interconnect Telephone Services, Inc. v. Farren,* 59 B.R. 397 (Bankr.S.D.N.Y.1986). Thus, if the parties wish to pursue the issue of withdrawal of reference, a motion must be brought in the district court.

### The Within Matter is a Non–Core Proceeding

■ The within adversary complaints clearly state that they are seeking the collection of a pre-bankruptcy petition account receivable. Pursuant to 28 U.S.C. § 157(b)(3), this Court must exercise its discretion and determine whether adversary complaints, such as those before the Court seeking to collect on a pre-bankruptcy account receivable, constitute core proceedings or are proceedings that are otherwise related to a case under Title 11.

Justice Brennan in *Northern Pipeline Construction Co. v. Marathon Pipe Line Co.,* 458 U.S. 502, 102 S.Ct. 2858, 73 L.Ed. 2d 928 (1982) held that the Bankruptcy Code granted an unconstitutional rendering of power to the bankruptcy judges inasmuch as said judges sit as Article I judges with a 14 year appointment as opposed to Article III judges who serve for life. In an attempt to rectify this situation the Congress in 1984 passed a series of amendments clarifying the jurisdiction of the bankruptcy court. Particularly 28 U.S.C. § 157 enumerates certain "core" proceedings which are expressly under the jurisdiction of the United States Bankruptcy Courts. Said core items are expressly set forth in 28 U.S.C. § 157(b)(2)(A) through (O).

There is a generally recognized split of authority as to whether the 1984 Amendments to the Bankruptcy Code have re-

solved the unconstitutional grant of broad jurisdiction to the bankruptcy courts as struck down in *Marathon, supra.* Those courts which have found bankruptcy courts as a result of the 1984 Amendments to have jurisdiction to adjudicate state law contract actions by the estate against noncreditor defendants, such as is before the Court in the within matters, include *In re Arnold Print Works, Inc. v. Apkin,* 61 B.R. 520 (D.Mass.1986)); *vacated in part and remanded,* 815 F.2d 165 (1st Cir.1987) (holding that action to collect post-petition accounts receivable was a "core proceeding"); *In re National Equipment & Molding Corp.,* 64 B.R. 239 (Bankr.N.D.Ohio 1986); *In re Franklin Computer Corp.,* 60 B.R. 795 (Bankr.E.D.Pa.1986); *In re Baldwin–United Corp.,* 48 B.R. 49 (Bankr.Ohio 1985).

There is a second line of cases which have expressly held that a broad reading of the 1984 Amendments to the Bankruptcy Code would violate the principles laid down by the *Marathon* Court. Such cases include *In re Acolyte Electric Corp. v. The City of New York, et al.,* 69 B.R. 155 (Bankr.E.D.N.Y.1986); *In re Allegheny, Inc. v. Laniado Wholesale Company,* 68 B.R. 183 (Bankr.W.D.Pa.1986); *In re Windsor Communications Group, Inc.,* 67 B.R. 692 (Bankr.E.D.Pa.1986); *In re Aristera,* 65 B.R. 928 (Bankr.N.D.Tx.1986); *In re R.I. Lithograph Corp.,* 60 B.R. 199 (Bankr.D.R.I.1986); *Matter of Century Brass Products, Inc.,* 58 B.R. 838 (Bankr. D.Conn.1986); *In re Satelco, Inc.,* 58 B.R. 781 (Bankr.N.D.Tx.1986).[2]

This Court finds that prepetition account receivable collections are merely "related to" a Title 11 bankruptcy case and that the 1984 Amendments passed by Congress were not intended to give this Court a

---

**2.** The Court notes the recent decision of the Third Circuit Court of Appeals, *In re Meyertech Corp.,* 831 F.2d 410 (3d Cir.1987), holding that a post-petition action against the debtor's estate based upon a pre-petition breach of warranty was a "core-proceeding." The case at bar can be distinguished as it involves an action *by the estate* against a nondebtor defendant. The purpose of the matter *sub judice* is for the debtor,

Oneida, to increase the assets available for the creditors. *Meyertech* involved a third party's action *against the estate,* seeking to establish a substantial claim which would result in a lessening of the estate.

The Court further notes that in defining a "core proceeding," 28 U.S.C. § 157(b) specifically refers to claims *against the estate.*

jurisdiction over said matters. It must be remembered that the *Marathon* case, *supra*, involved the collection of a prepetition account receivable matter. Nothing in the 1984 Amendments directly addresses the gravamen of the constitutional issue framed by Justice Brennan in *Marathon* in striking down the Bankruptcy Reform Act of 1978 insofar as it granted overly broad jurisdiction to the bankruptcy judges.

The proposition that the bankruptcy court does not have core jurisdiction over pre-filing account receivable collection matters has been viewed by Professor Collier as the "better result." [3]

### REFERENCE TO ICC

■ Defendants in the matter before the Court seek to have plaintiff's complaint seeking collection of freight undercharges referred to the Interstate Commerce Commission pursuant to 28 U.S.C. § 1336(b). It is the contention of the defendants that the rates and practices of Oneida are fraudulent, deceptive, unreasonable and unlawful. Defendants assert that the proper forum to determine the issues before the Court is the Interstate Commerce Commission.

Oneida claims that referral to the Interstate Commerce Commission is unnecessary because an unreasonable practice claim, such as asserted by the defendants, is not a defense to an undercharge claim. Federal statutes require that a trucking company acting as a common carrier must file a tariff with rates for transportation services with the Interstate Commerce Commission. The Interstate Commerce statutes expressly prohibit such common carriers from charging rates that differ from their filed tariff. (49 U.S.C.A. § 10761(a)) A filed tariff has the force of law whose terms cannot be altered by either a shipper or carrier. *TADMS, Inc. v. Consolidated Freightways*, 619 F.Supp. 385 (C.D.Cal.1985).

The case law as well as the Congressional record is replete with references to the effect that the published tariff must be enforced. The underlying principle behind said position is to preserve the integrity of the published tariff rate for the benefit of the public at large. It is the prevention of collusion between a shipper and a carrier and the prevention of the creation of secret rates which are against the public interest that is the underlying principle behind the case law that preserves the sanctity of the published tariff. *Armour Packing Co. v. U.S.*, 209 U.S. 56, 28 S.Ct. 428, 52 L.Ed. 681 (1908); *Thurston Motor Lines v. Jordan K Rand Ltd.*, 460 U.S. 533, 103 S.Ct. 1343, 75 L.Ed.2d 260 (1983).

The United States Supreme Court in *Louisville & Washville Railroad Co. v. Maxwell*, 237 U.S. 94, 35 S.Ct. 494, 59 L.Ed. 853 (1918) [4] at page 97 noted:

Deviation from [the rate] is not permitted upon any pretext. Shippers ... are charged with notice of it, and they as well as the carrier must abide by it, unless it is found by the Commission to be unreasonable. Ignorance ... of rates is not an excuse for paying or charging either less or more than the rate filed. This rule is undeniably strict and it obviously may work hardship in some cases, but it embodies the policy which has been adopted by Congress....

The fact that the filed rate as set forth in the published tariff is in the public interest and works against the creation of unfair competition as well as other abuses previously existing in the freight industry was recognized in the case of *Louisville & Nashville Railroad v. Maxwell*, 237 U.S. 94, 35 S.Ct. 494, 59 L.Ed. 853 (1915); see also *Farley Transport Co. v. Sante Fe Trail Transport Co.*, 778 F.2d 1365 (9th Cir.1985).

Defendants rely upon some recent court opinions as well as a policy statement put forth by the Interstate Commerce Commis-

---

3. See 1 *Collier on Bankruptcy*, ¶ 3.01(2)(b)(iii) (15th Ed.1987).

4. This citation has been corrected from this Court's original filed opinion for publication purposes.

sion wherein the filed rate doctrine has been somewhat modified. In this regard see *Seaboard Systems Railroad v. United States,* 794 F.2d 635 (11th Cir.1986) as well as *Nashville Industry Transportation League—Petition to Interstate Rule Making on Negotiated Motor Common Carrier Rates,* 1986 Fed.Carr.Cas. (CCH) ¶ 37,284 at 47, 348. Both of the above recognize the I.C.C.'s adoption of a new policy reviewing cases to determine whether the collection of the tariff rate constitutes an "unreasonable practice."

However, as was noted in *West Coast Truck Lines, Inc. v. Kaiser Aluminum & Chemical,* No. C–87–0048 (N.D.Cal. 7/29/87) (opinion attached to appendix "C" of plaintiff's submission) wherein District Judge Patel denied reference to the ICC, the Court held at page 6:

> However, these efforts to refer matters to the ICC must be reviewed in light of the fact that the ICC does not have the power to reject effective tariffs, *ICC vs. American Trucking Association, Inc.,* 467 U.S. 354, 363 (1984), rehearing denied, 468 U.S. 1224 (1984), nor the authority to order the waiver of undercharges, *NITL—Petition to Institute Rule Making,* 1986, Fed.Carr.Cas. (CCH) ¶ 37,284.03 at 47, 352.

It is noted that both plaintiff and defendants concede that should this matter be referred to the Interstate Commerce Commission the sole function that the Commission can serve would be to issue an advisory opinion to a court based upon the equitable claim of unreasonableness raised by the defendants herein. Since this Court has already ruled that the within matter is a non-core proceeding it follows that any ultimate decision by this Court would result in the Bankruptcy Court issuing proposed findings of fact and conclusions of law and submitting same to the District Court. If this matter were referred to the ICC, the Court would then find itself in the position of issuing what amounts to an advisory opinion to the District Court based upon an advisory opinion from the Interstate Commerce Commission. To state said premise is to recognize the absurdity of such a situation.

Based upon its review of the rate review cases submitted by the parties, this Court finds that there are no grounds for reference of the within matter to the Interstate Commerce Commission. The within complaints will be tried in the Bankruptcy Court as non-core proceedings that are otherwise related to the within bankruptcy case. Pursuant to 28 U.S.C. § 157(c)(1), at the conclusion of the trial on the merits, this Court shall submit proposed findings of fact and conclusions of law to the District Court, and any final order or judgment shall be entered by the district judge after considering this Court's proposed findings and conclusions, and after reviewing *de novo* those matters to which any party has timely and specifically objected.

As noted above, either party to the within proceeding has a right to apply to the United States District Court for the withdrawal of the reference herein pursuant to Bankruptcy Code Section 157(d).

For the within reasons the motions of the defendants are denied.