ONEIDA MOTOR FREIGHT, INC., and
Delta Traffic Service, Inc., Plaintiffs,

v.

The ORMOND SHOPS, INC., Thomas
J. Lipton, Inc. and Lionel Leisure,
Inc., Defendants.

Civ. A. No. 90–4876.

United States District Court,
D. New Jersey.

April 11, 1991.

**432**

Evelyn Marose, Nicolette & Perkins, Paramus, N.J., Joseph L. Steinfeld, Jr., Sims, Walker & Steinfeld, P.C., Washington, D.C., for plaintiffs.

James F. Keegan, Bendit, Weinstock & Sharbaugh, West Orange, N.J., Larsh B.

Mewhinney, New York City, for defendants.

## OPINION

LECHNER, District Judge.

This matter is before the court on the objections of the defendants The Ormond Shops, Inc. ("Ormond"), Thomas J. Lipton, Inc. ("Lipton") and Lionel Leisure, Inc. ("Lionel") (collectively, the "Defendants") to the Proposed Findings of Fact and Conclusions of Law in Non–Core Proceedings Submitted to District Court Pursuant to 28 U.S.C. § 157(c)(1) and Bankruptcy Rule 9033 (the "Proposed Findings") of the bankruptcy court. In the Proposed Findings, the bankruptcy court recommended granting the summary judgment motion of plaintiffs Oneida Motor Freight, Inc. ("Oneida") and Delta Traffic Service, Inc. ("Delta Traffic") (collectively, the "Plaintiffs") and denial of the Defendants' request to re-refer this matter to the Interstate Commerce Commission (the "ICC"). The Plaintiffs oppose the objections of the Defendants and move for adoption of the Proposed Findings by this court.[1]

1. In support of their objections the Defendants submit: a letter to the court dated 19 November 1990 setting forth their objections; the Defendant's Memorandum of Law (the "Defendants' Brief"); and the Defendant's Reply Memorandum (the "Defendants' Reply").

In opposition to the Defendants' objections, the Plaintiffs submit: the Plaintiffs' Response to Defendants' Objection to Proposed Findings of Fact and Conclusions of Law; the Plaintiffs' Brief in Support of the Bankruptcy Court's "Proposed Findings of Fact and Conclusions of Law" (the "Plaintiffs' Brief"); and the Plaintiffs' Reply Brief in Support of the Bankruptcy Court's "Proposed Findings of Fact and Conclusions of Law" (the "Plaintiffs' Reply").

In addition, the parties submitted a compilation in three volumes of documents from the bankruptcy court and ICC proceedings, numbered 1 through 14 as follows: (1) *Oneida Motor Freight, Inc., et al. v. The Ormond Shops, Inc., C & A Wallcoverings, Inc., et al.,* B.C. Nos. 85–03606, 87–0613, 87–0661, 87–0527 (Bankr.D.N.J. 17 February 1989) (the "17 February 1989 Opinion"); (2) *Oneida Motor Freight, Inc., et al. v. The Ormond Shops, Inc., C & A Wall Coverings, Inc., et al.,* D.C. No. 87–4821 (D.N.J. 11 January 1988) (the "11 January 1988 Opinion") (3) *Oneida Motor Freight, Inc., et al. v. The Ormond Shops, Inc., C & A Wall Coverings, Inc., et al.,* B.C. Nos. 85–03606, 87–0527, 87–0642, 87–0664,

87–0661 (Bankr.D.N.J. 29 September 1988) (the "29 September 1988 Opinion"); (4) a duplicate of the 17 February 1989 Opinion; (5) Complaint of the Defendants filed 10 March 1989 with the ICC (the "ICC Complaint"); (6) 22 June 1989 letter to the ICC from Ronald P. Mealey, Esq.; (7) no attachment; (8) the Verified Statement of Joseph Bernard ("Bernard") submitted to the ICC on behalf of Lionel, dated 12 October 1989; the Verified Statement of Bernard submitted to the ICC on behalf of Lionel, dated 24 May 1989 (the "Bernard 24 May 1989 Statement"), adopting his affidavit submitted to the bankruptcy court in support of referral to the ICC, dated 17 June 1988, and attached thereto; the Verified Statement of Robert Burdette ("Burdette") submitted to the ICC on behalf of Ormond, dated 11 October 1989; the Verified Statement of Burdette submitted to the ICC, dated 22 June 1989 (the "Burdette 22 June 1989 Statement"), adopting his affidavit submitted to the bankruptcy court in support of referral to the ICC, dated 13 June 1988 (the "Burdette 13 June 1988 Aff."), and attached thereto, with exhibits; the Verified Statement of Neil Flechner submitted to the ICC on behalf of Ormond, dated 22 May 1989 (the "Flechner 22 May 1989 Statement"), adopting his affidavit submitted to the bankruptcy court in support of referral to the ICC, dated 13 June 1988, and attached thereto, with exhibits; the Verified Statement of Flechner submitted to the

For the following reasons, the Proposed Findings are not adopted. The matter is re-referred to the ICC and the summary judgment motion is denied without prejudice. The case is administratively terminated. It may be reopened and the summary judgment motion may be refiled, if appropriate, within thirty (30) days of the ICC's determination on re-referral.

*Facts* [2]

A. Procedural History

On July 10, 1985, Oneida filed its voluntary petition for relief under Chapter 11 of the United States Bankruptcy Court, 11 U.S.C. §§ 101 *et seq.* Oneida was a motor common carrier engaged in interstate commerce prior to its filing of the petition for relief. As such, it was subject to regulation under the Interstate Commerce Act (the "ICA"), 49 U.S.C. §§ 10101 *et seq.*, and to the jurisdiction of the ICC.

Delta is an auditor hired by Oneida to audit Oneida's freight bills and to collect amounts found to be due to Oneida for services rendered during the three-year pe-

riod preceding the commencement of the bankruptcy. As part of its duties, Delta ascertained whether the freight bills charged and paid by customers during that three-year period accurately reflected charges. Delta's analysis was based on the tariffs filed by Oneida [3] with the ICC.

In performing its audit, Delta discovered the amounts actually charged and received from various shippers, including the Defendants, were less than the rates filed in Oneida's tariffs. Delta recommended collection actions to collect the amounts undercharged. In June and July of 1987, Oneida and Delta filed complaints in bankruptcy court for the undercharges, seeking to recover $44,529.75 from Ormond, $6,103.96 from Lipton, and $3,672.70 from Lionel. Oneida and Delta based their actions upon provisions of the ICA which provide, *inter alia*, that a rate tariff must be filed by a common carrier and the carrier must charge and receive that "filed rate" (hereinafter, the "filed rate doctrine"). 49 U.S.C. §§ 10741(a), 10761(a), and 10762(a)(1). [4]

ICC, dated 11 October 1989; the Verified Statement of Joseph Reeve submitted to the ICC on behalf of Lipton, dated 13 October 1989 (the "Reeve 13 October 1989 Statement"); and the Verified Statement of Michael J. Posig submitted to the ICC on behalf of Lipton, dated 19 June 1989 (the "Posig 19 June 1989 Statement"); (9) the Defendants' Brief and Statements in Rebuttal submitted to the ICC, dated 13 October 1989; (10) *The Ormond Shops, Inc., Thomas J. Lipton, Inc., and Lionel Leisure, Inc. v. Oneida Motor Freight, Inc. and Delta Traffic Service, Inc.*, No. MC–C–30156 (I.C.C. 11 January 1990) (the "ICC Opinion"); (11) the Plaintiffs' Brief in Support of Motion for Summary Judgment submitted to the bankruptcy court, dated 12 July 1990, and exhibits attached thereto, including their Statement of Facts and Argument of Counsel submitted to the ICC, dated 28 August 1989, attached as Exhibit C and the 24 April 1990 letter from Larsh B. Mewhinney, Esq., counsel for the Defendants, to Joseph L. Steinfeld, Jr., Esq., counsel for the Plaintiffs (the "24 April 1990 MeWhinney Letter to Steinfeld"), attached as Exhibit G; the Verified Statement of Leonard S. Goodman submitted to the ICC on behalf of the Defendants, dated 7 August 1989, and attachments; the affidavits of Lonnie L. Kennedy, dated 24 July 1989, and the exhibits attached thereto; (12) the Defendants' Memorandum in Opposition to Motion for Summary Judgment and in Support of Motion to Refer submitted to the bankruptcy court, dated 20 July 1990; (13) the Plaintiffs' Reply to Defendants' Memoran-

dum in Opposition to Plaintiffs' Motion for Summary Judgment and in Support of Defendants' Motion for Referral submitted to the bankruptcy court, dated 31 July 1990; and (14) 30 January 1991 letter from Joseph L. Steinfeld, Jr., counsel for the Plaintiffs, to Larsh B. Mewhinney, counsel for the Defendants.

2. The facts are taken from the Proposed Findings, except where indicated otherwise.

3. Oneida was a member of the Mid Atlantic Conference (the "MAC"), a rates conference of common carriers which establishes rates for its members. Most of the tariffs at issue in the instant case were MAC-filed tariffs.

4. Section 10741(a) states:
(a) A common carrier providing transportation subject to the jurisdiction of the Interstate Commerce Commission under subchapter I of chapter 105 of this title may not charge or receive from a person a different compensation (by using a special rate, rebate, drawback, or another means) for a service rendered, or to be rendered, in transportation the carrier may perform under this subtitle than it charges or receives from another person for performing a like and contemporaneous service in the transportation of a like kind of traffic under substantially similar circumstances. A common carrier that charges or receives such a different compensation for that service unreasonably discriminates.

In response, the Defendants asserted they had relied on Oneida's representations that the rate charged equalled the filed tariff. They therefore argued Oneida's actions in attempting to collect the filed rate constituted an unreasonable practice or fraud under 49 U.S.C. § 10701(a).[5] In the alternative, the defendants moved for referral of their fraud defense to the ICC.

On 19 October 1987, the bankruptcy court denied the Defendants' motion for referral to the ICC, holding the filed rate doctrine precluded fraud defenses to undercharge actions. *In re Oneida Motor Freight, Inc.*, 86 B.R. 344, 349 (Bankr.D.N.J.1987) (the "19 October 1987 Opinion"). In addition, the bankruptcy court found the Plaintiffs' collection actions were "related to" a Title 11 bankruptcy case and as such were not within the core jurisdiction of the bankruptcy court. *Id.* at 347–48. The bankruptcy court stated that because collection actions are non-core proceedings, its role was limited to issuing proposed findings of fact and conclusions of law for submission to this court. *Id.* at 349.

The Defendants appealed the bankruptcy court's denial of referral to the ICC and moved for this court to withdraw the collection actions from the bankruptcy court pursuant to 28 U.S.C. § 157(d). By order, dated 11 January, 1988, this court consolidated the collection actions against the individual Defendants for purposes of appeal and referral, denied the motion for withdrawal of the consolidated case from the bankruptcy court and affirmed the bankruptcy court's ruling that the unreasonable practice defense was foreclosed by the filed rate doctrine. In addition, because the Defendants raised on appeal the additional defense that the filed tariff was unreasonable, the consolidated case was remanded to the bankruptcy court with the instructions:

> Should defendants specify and substantiate their allegation that Oneida's filed rates were unreasonable, the Bankruptcy Court should reconsider referring the issue to the ICC under the doctrine of primary jurisdiction.

11 January 1988 Opinion at 43.

Upon remand to the bankruptcy court, the Defendants renewed their motions for referral of the practice and rate reasonableness issues to the ICC. In doing so, the Defendants claimed the 11 January 1988 Opinion affirmed the bankruptcy court's denial of referral only as to Ormond and another defendant;[6] no decision had been made on the referral of those issues as requested by Lipton and Lionel. The bankruptcy court denied their motions, holding the Defendants were precluded by the doctrine of the law of the case from renewing their unreasonable practices defense. *See* 29 September 1988 Opinion.

In addition, pursuant to this court's directive, the bankruptcy court reviewed the rate reasonableness arguments and exhibits submitted by the Defendants to determine whether they were sufficient to warrant referral of that issue to the ICC. The bankruptcy court observed that the evidence submitted by the Defendants showed only that Oneida had to compete for their business and that business would have gone to Oneida's competitors had Oneida not lowered its rate below the rate filed with the ICC. The bankruptcy court denied referral, determining the Defendants

---

49 U.S.C. § 10741(a). Section 10761(a) states in relevant part:

(a) Except as provided in this subtitle, a carrier providing transportation or service subject to the jurisdiction of the Interstate Commerce Commission under chapter 105 of this title shall provide that transportation or service only if the rate for the transportation or service is contained in a tariff that is in effect under this subchapter.

49 U.S.C. § 10761(a). Section 10762(a)(1) states in relevant part:

A motor common carrier shall publish and file with the Commission tariffs containing the rates for transportation it may provide under this subtitle.

49 U.S.C. § 10762(a)(1).

5. Section 10701(a) states, in part:

(a) A rate, classification, rule or practice related to transportation or service provided by a carrier subject to the jurisdiction of the Interstate Commerce Commission under chapter 105 of this title must be reasonable.

49 U.S.C. § 10701(a).

6. That defendant is no longer a party in this consolidated proceedings.

"failed to submit evidence of issues which, if ruled upon in their favor, might justify a finding for the defendants as a matter of law." *Id.* at 13, 14.

On 26 October 1988, in an unrelated but factually similar case, this court issued a decision referring a rate reasonableness question to the ICC. The decision to refer was based on evidence showing a plaintiff's filed rates exceeded the rates charged by competitors, evidence similar to that which had been raised by the Defendants in the instant case before the bankruptcy court. *See Delta Traffic Service, Inc. and Campbell 66 Express, Inc. v. Thomas J. Lipton, Inc.* ("*Campbell 66*"), No. 88–1600 (D.N.J. 26 October 1988).

In *Campbell 66*, with regard to the historically strict adherence by courts to the filed rate doctrine, it was observed that:

So strong is the filed rate doctrine that the shipper must pay the filed rate notwithstanding its ability to demonstrate culpable conduct on the part of the carrier. "Shippers and travelers are charged with notice of [the filed rate]," [*Louisville and N.R. Co. v. Maxwell*, 237 U.S. 94, 35 S.Ct. 494, 59 L.Ed. 853 (1915)], and thus cannot claim as an equitable defense deception brought on by the carrier's misrepresentation. Because a shipper is "conclusively presumed" to know that it must pay the filed rate, it can assert no reasonable reliance upon a carrier's fraudulent misrepresentations to the contrary. *Aero Trucking, Inc. v. Regal Tube Co.*, 594 F.2d 619 (7th Cir. 1979).

*Id.*, slip op. at 8. This court therefore denied referral of the defendants' unreasonable practices defense to the ICC, finding such defense to be precluded by the filed rate doctrine.

In addition, this court reiterated in *Campbell 66* that a defense based on "the reasonableness of the rates as filed ... is not barred by the filed rate doctrine" and that the question of the reasonableness of a rate is for the determination of the ICC. *Id.* at 17–18, 21. It was held:

Lipton asserts that Campbell's filed rate was "52% higher than average." Lipton supplies comparisons with five other carriers, each of which is said to have charged a considerably lower rate. Lipton asserts that the filed rates are "noncompetitive." It further asserts that it "wants the ICC to rule that the rates Campbell 66 is trying to collect are unreasonably high." Accordingly, I refer this matter to the ICC for a determination as to the inherent reasonableness of Campbell's filed rates.

*Id.* at 20–21. This court then granted referral to the ICC on the rate reasonableness issue only.

Based on this court's opinion in *Campbell 66*, the Defendants moved before the bankruptcy court for reconsideration of the 29 September 1988 Opinion denying the Defendants' renewed motion for referral to the ICC. In an opinion and order, filed 17 February 1989, the bankruptcy court granted the Defendants' motion for reconsideration and referred the rate reasonableness issue alone to the ICC. In keeping with prior opinions of the bankruptcy court and this court, the order of referral specifically limited referral to the reasonable rate issue and prohibited referral on the unreasonable practice defense. *See* 17 February 1989 Opinion.

On 1 March 1989, in spite of the bankruptcy court's limited order of referral, the Defendants filed their complaint with the ICC requesting a determination "that certain rates and practices" of the Plaintiffs were "unjust, unreasonable, unlawful and illegal under the Interstate Commerce Act...." *See* ICC Complaint. In their statement of issues, the Defendants asserted that Oneida's rates and practices would be shown to be unreasonable, and that the Commission would find the "'undercharges' and the higher rates sought to be recovered to be unjust, unreasonable, unlawful and illegal...." *Id.* The Defendants attached a copy of the 19 February 1989 Opinion and requested that the ICC communicate its determination and declaration to the bankruptcy court.

On 11 January 1990, after reviewing the evidence presented by the parties, the ICC issued its determination that Oneida's prac-

tices were unreasonable and that Oneida could not, therefore, collect the undercharges. Despite the bankruptcy court's limited referral, the ICC stated: "In view of our findings, it is unnecessary to discuss rate reasonableness issues referred by the Court." *See* ICC Opinion at 6.

The ICC's determination of the unreasonable practices question was based on its *Negotiated Rates* decisions, wherein the ICC abandoned its traditionally strict adherence to the filed rate doctrine. The ICC held:

> Application of the negotiated rates policy is intended to temper the harsh effects of the filed rate doctrine when it can be shown that the shipper and carrier negotiated and agreed upon a rate that was not published in a tariff. Our role in such cases is to undertake an analysis of whether a negotiated but unpublished rate existed, the circumstances surrounding assessment of the tariff rate, and any other pertinent facts, and to determine: (a) whether collection of undercharges based on the rate contained in the published tariff would constitute an unreasonable practice; and (b) if a negotiated rate is found to exist, whether this amount is all the carrier should be permitted to collect.
>
> In *Wakefern* [*Food Corp. v. Southwest Freight Lines, Inc.*, 3 I.C.C.2d 814 (1987) ], we determined that an opinion in favor of the shipper under the *Negotiated Rates* precedent requires two basic findings: (1) that a rate other than the tariff rate was quoted by a carrier representative upon whom the shipper could legitimately rely and that an agreement to use that rate was reached; and (2) that the shipper reasonably relied on the quote.

ICC Opinion at 5. The ICC found Oneida's practice of quoting to the Defendants rates below the filed rate and the Defendants' reliance thereon constituted an unreasonable practice. It therefore ruled against permitting Oneida to recover undercharges from the Defendants. Neither party petitioned the ICC for reconsideration of its determination nor appealed that determination.

On 16 January 1990, five days after the ICC issued its determination in the instant case, the United States Supreme Court issued a writ of certiorari in *Maislin Industries, U.S., Inc. v. Primary Steel, Inc.*, —— U.S. ——, 110 S.Ct. 834, 107 L.Ed.2d 830 (1990). *Maislin* raised the question of the viability of the ICC's negotiated rates doctrine. The parties agreed to hold in abeyance the continued litigation of the instant case pending the Supreme Court's decision in *Maislin.*

On 21 June 1990, the Supreme Court ruled in *Maislin* that the ICC's negotiated rates policy violated the ICA. *Maislin Industries, U.S., Inc. v. Primary Steel, Inc.*, 497 U.S. ——, 110 S.Ct. 2759, 111 L.Ed.2d 94 (1990). In reversing the Eighth Circuit's determination that the negotiation of the charged rate by the parties constituted a defense to the plaintiff carrier's undercharge action, the Supreme Court held:

> For a century, this Court has held that the [ICA], as it incorporates the filed rate doctrine, forbids as discriminatory the secret negotiation and collection of rates lower than the filed rate. By refusing to order collection of the filed rate solely because the parties had agreed to a lower rate, the ICC has permitted the very price discrimination the Act by its terms seeks to prevent.... "If the rates are subject to secret alteration by special agreement then the statute will fail of its purpose to establish a rate duly published, known to all, and from which neither shipper nor carrier may depart.... [The ICA] has provided for the establishing of one rate, to be filed as provided, subject to change as provided, and that rate to be while in force the only legal rate. Any other construction of the statute opens the door to the possibility of the very abuses of unequal rates which it was the design of the statute to prohibit and punish."

*Id.*, 497 U.S. at ——, 110 S.Ct. at 2768, 111 L.Ed.2d at 111 (citations omitted).

In addition, the Supreme Court observed the filed rate doctrine "contains an important caveat: the filed rate is not enforce-

able if the ICC finds the rate to be unreasonable." *Id.*, 497 U.S. ——, 110 S.Ct. at 111 L.Ed.2d at 109. The Court noted: "The ICC did not determine whether the tariff rates were unreasonable even though respondent requested such a determination. We therefore must assume, for purposes of our decision today, that the rates were reasonable. The issue of the reasonableness of the tariff rates is open for exploration on remand." *Id.*, 497 U.S. at —— n. 10, 110 S.Ct. at 2767 n. 10, 111 L.Ed.2d at 110 n. 10. The Supreme Court then remanded the case "for further proceedings consistent with this opinion." *Id.*, 497 U.S. at ——, 110 S.Ct. at 2771, 111 L.Ed.2d at 114.

On 12 July 1990, approximately three weeks after the Supreme Court issued its decision in *Maislin,* the Plaintiffs filed a motion for summary judgment on their collection action. The Plaintiffs argued they were entitled as a matter of law to collect the undercharges or the difference between the amounts charged and received from the Defendants and the rates filed in Oneida's tariff. The Defendants opposed summary judgment and moved for re-referral of the case to the ICC for a determination of the rate reasonableness issue. The Defendants argued a determination on the rate reasonableness question was necessary to the resolution of the dispute and the ICC was the only competent body to make such a determination. The Plaintiffs opposed re-referral on the ground that the Defendants had ample opportunity to obtain a ruling from the ICC on the rate reasonableness issue but through their own fault failed to do so. The Plaintiffs pointed out the Defendants raised before the ICC an unreasonable practices defense in addition to the rate reasonableness defense, contrary to the order of referral. In addition, the Plaintiffs pointed out that after the ICC failed to address the rate reasonableness issue the Defendants failed to move for reconsideration or to appeal the ICC determination. The Plaintiffs contended the Defendants should therefore not be permitted "another bite at the apple."

On 8 November 1990, the bankruptcy court issued the Proposed Findings, in which it recommended granting summary judgment for the Plaintiffs and denying the Defendants' motion for re-referral of the rates reasonableness issue to the ICC. The bankruptcy court based its ruling on its finding that the Defendants presented what was primarily an unreasonable practices defense before the ICC and submitted inadequate proofs on the question of the unreasonableness of Oneida's filed rates. The bankruptcy court observed:

Of the affidavits and exhibits presented to the ICC which constitute the proffered proofs, only one substantiates the bare allegation that Oneida's rates as filed were not competitive, and it merely states the company [a company no longer a defendant in the instant case] used other carriers with filed discount rates comparable to the discount negotiated with Oneida; it does not, unfortunately, state whether those rates applied to the same routes for which the company hired Oneida, nor provide any information which is probative of the reasonableness of Oneida's rates.

The majority of the affidavits and exhibits submitted to the ICC are directly aimed at defendants' main defense, that the parties agreed to the negotiated rate and it is an unreasonable practice to collect the filed rate.

Proposed Findings at 17.

The bankruptcy court stated that the "fundamental character of all ICC rate reasonableness opinions is … *prospective* application of ICC [determinations]…." *Id.* at 22 (emphasis in original). It therefore observed that upon referral, the ICC would be without authority to order relief based on an allegedly unreasonable rate existing in the past. Any ICC determination upon referral would constitute a recommendation only, subject to *de novo* review by the bankruptcy court. *Id.* at 19.

The bankruptcy court stated that a rate's reasonableness is determined with reference to the "need for the carrier to generate revenues sufficient to provide the service to which the rate applies; the needs of the public to obtain that service at the lowest cost possible; the inherent advan-

tages of motor carrier service[;] ... the costs to the carrier in providing the service[;].... the effect of the minimum prescribed rate on the movement of traffic by the carrier.... [and the principle that] rates should be maintained at least at a reasonable minimum which will provide revenues to cover total operating costs and provide a reasonable profit on capital." *Id.* at 20 (citing 49 U.S.C. §§ 10704(a), (b) and (c)). The bankruptcy court found the proofs submitted by the Defendants to the ICC did not address these concerns. It therefore denied referral, stating: "Referral at this point would be an exercise in futility; the court already finds there is no evidence proffered which can support a rate reasonableness challenge. Referral would only delay today's decision." *Id.* at 19. The bankruptcy court found the Defendants presented no genuine issue of material fact to defeat summary judgment and recommended granting the Plaintiffs' motion for summary judgment on the undercharges. *Id.* at 25.

### B. Record Before the ICC

As stated in the Proposed Findings, the complaint filed by the Defendants with the ICC requested a determination on both the reasonableness of Oneida's practices and on its rates. The bankruptcy court recommended granting the Plaintiffs' summary judgment motion and denying the Defendants' motion for re-referral of the rates issue to the ICC based on its finding that the evidence submitted by the Defendants to the ICC was inadequate in order to prevail on a reasonable rates defense.

The evidence submitted to the ICC by the Defendants on the issue of the reasonableness of the filed rates related primarily to claims that Oneida's filed rate substantially exceeded rates charged by Oneida's competitors.[7] Joseph Bernard ("Bernard"), the Traffic Manager of Lionel, submitted a verified statement. He stated that Lionel received discounts from Oneida "equivalent to 30% of the Oneida filed tariff rates," and that the filed tariff rates "were at least

50% higher than what were available to [it] in the market from other carriers." Bernard 24 May 1989 Statement at 2. He continued: "Oneida's filed tariff rates were unreasonably high; they were prohibitive; certainly such undiscounted rates would prohibit [Lionel] from utilizing Oneida as a carrier or moving [its] goods at such rates." *Id.* Bernard stated other carriers, including Roadway Express, Yellow Freight System and ABF Freight System "offered [Lionel] discounts of 35% to their *filed* tariff rates." *Id.* (emphasis added). He therefore characterized Oneida's filed rate as "uncompetitive." *Id.* at 3.

Robert Burdette, warehouse manager at Ormond, submitted a verified statement in which he stated:

It was notorious in the industry that undiscounted [Mid Atlantic Conference] rates were far too high. As a consequence, carriers which wanted Ormond traffic at the time (such as New Penn, Red Star, and Ward Trucking) were offering Ormond discounts in the range of 30%.... They informed [Ormond], as did Oneida, that those discounts were filed and effective as a part of the carriers' tariffs.... The competitors offered the discounts *and filed them* in their tariffs. Oneida offered virtually identical discounts but *did not file them* (it now appears).

Burdette 22 June 1989 Statement at 4 (emphasis in original). He continued:

I want to emphasize the essentially absurdity [sic] of any effort by Oneida to contend in 1989 that the high rates it seeks now were "reasonable" at the time. Oneida billed Ormond at the lower rates and accepted payment without protest *for five years*. Common sense informs us that, to Oneida as well as to Ormond, the lower rate was the "market" rate. The parties agreed, in a real sense, to its reasonableness. This is not a case in which the Commission needs to examine costs or other data, even if it were made available.

---

7. It was stipulated in the bankruptcy court by the parties that the positions adopted by one

Defendant were adopted by the others. *See* Posig 19 June 1989 Statement at 2.

*Id.* at 9 (emphasis in original). Burdette described Oneida's filed rates as "paper rates," as they were "prohibitively high for any significant volume of traffic." Burdette 13 June 1988 Aff., ¶ 10. He stated: "The higher rates it now wants to collect from Ormond years later are unreasonable in the sense that they were 'paper rates,' out of all proportion to the prevailing level in the industry (on the traffic and in the areas here involved)...." *Id.,* ¶ 11.

Burdette stated in his 11 October 1989 verified statement: "Frankly, I don't know for sure that all of the rates offered to Ormond by Oneida's competitors were 'filed.' I suspect most of them were because we have no undercharge claims from them." Burdette 13 June 1988 Aff., ¶ 3. Burdette stated Ormond does not keep copies of the tariffs of carriers such as Oneida because the "tariffs of rate bureaus such as MAC are enormous in bulk, extremely complex, and constantly changing." *Id.*

Neil Flechner, Senior Vice President for Finance at Ormond, submitted a verified statement in which he stated simply: "[T]he high rates the respondents seek to apply are simply too high and, therefore, inherently unreasonable." Flechner 22 May 1989 Statement at 2.

Joseph Reeve, Transportation Manager at Lipton, submitted a verified statement in which he stated:

> Lipton has no information concerning Oneida's financial condition, now or in the past, nor its costs of operations, profitability, or management capacities.... I consider it impossible, years after the fact, to state with precision which provisions of what motor carriers' tariffs would have been applied to justify giving Lipton ... the rates offered to Lipton in competition with Oneida.... [M]any carriers' tariffs were then and are now of such enormous bulk, complexity, imprecision, and cost as to make it extremely difficult for a shipper to be sure what rates apply even on *current* shipments.... Second, it now appears that many carriers, some, but not all, now defunct, were engaged in wholesale tariff-violation practices. It is possible,

therefore, that some of the carriers offering Lipton market-competitive rates at the time were dong what Oneida was doing.

Reeve 13 October 1989 Statement at 2–3 (emphasis in original).

Michael J. Posig, General Traffic Manager at Lipton, stated in his verified statement that the filed rates of Oneida are unreasonably high "by a factor of about 50%" and compared the rate of Preston Trucking, without stating whether such rate was Preston Trucking's negotiated or the filed rate, to the filed rate of Oneida. Posig 19 June 1989 Statement at 3.

*Discussion*

A. Standard of Review

Because the instant matter involves noncore proceedings, the bankruptcy judge may submit only proposed findings of fact and conclusions of law which are subject to *de novo* review by this court. *See* 28 U.S.C. § 157(c)(1); *In re Epi–Scan, Inc.,* 71 B.R. 975, 978 (Bankr.D.N.J.1987).

B. Primary Jurisdiction Doctrine

Under 49 U.S.C. § 10701(a), "[a] rate ... provided by a carrier subject to the jurisdiction of the [ICC] ... must be reasonable." *Id.* Under 49 U.S.C. § 10704(a), "the [ICC may], after a full hearing, decide[ ] that a rate charged or collected by a carrier ... or that a classification, rule or practice of that carrier, does or will violate this subtitle, [and] may prescribe the rate ..., classification, rule, or practice to be followed." *Id.*

In a case involving a challenge to the reasonableness of an effective, not prospective rate, the ICC has authority upon referral only to issue an advisory opinion and is without power to reject a filed tariff or to order waiver of undercharges. As the ICC stated in a 1986 policy statement, *Ex Parte No. MC–177,* 1986 Fed.Carr.Cas. (CCH) ¶ 37,284 at p. 47,350–52, the ICC "does not have jurisdiction over claims challenging the reasonableness of motor carrier rates charged in the past nor authority to order waiver of undercharges. [It] address[es] the question of what rates should have

been charged by a carrier only in an advisory capacity upon referral of a court." *See also Branch Motor Express Co. v. Caloric Corp.*, No. 86–4850, slip op. at 9 n. 4, 1989 WL 3503 (E.D.Pa. 18 January 1989); 11 January 1988 Opinion at 34–35. The parties have conceded during the course of these proceedings that the sole function of the ICC in a referral of the instant case is to issue an advisory opinion on the claim as to unreasonableness. *See In re Oneida Motor Freight, Inc.*, 86 B.R. at 349.

█ Under the doctrine of primary jurisdiction, a district court may refer a matter otherwise within its original jurisdiction to an appropriate administrative agency. The "doctrine of primary jurisdiction … is concerned with promoting proper relationships between the courts and administrative agencies charged with particular regulatory duties." *United States v. Western Pacific R.R. Co.*, 352 U.S. 59, 63, 77 S.Ct. 161, 165, 1 L.Ed.2d 126 (1956). *See also Delta Traffic Service, Inc. v. Occidental Chemical Corp.*, 846 F.2d 911, 913 n. 3 (3d Cir.1988); *Puerto Rico Maritime Shipping Authority v. Valley Freight Systems, Inc.*, 856 F.2d 546, 549 (3d Cir.1988). It applies when enforcement of a claim originally cognizable in the courts requires resolution of issues which have been placed within the special competence of an administrative body. *Western Pacific R.R.*, 352 U.S. at 64, 77 S.Ct. at 165; *Delta Traffic Service, Inc. v. Transtop, Inc.*, 902 F.2d 101, 103 (1st Cir.1990); *Puerto Rico Maritime Shipping Authority*, 856 F.2d at 549; *Occidental Chemical Corp.*, 846 F.2d at 913 n. 3; *Consolidated Rail Corp. v. Certainteed Corp.*, 835 F.2d 474, 477 (3d Cir.1987). "[I]n such a case the judicial process is suspended pending referral of such issues to the administrative body for its views." *Western Pacific R.R. Co.*, 352 U.S. at 64, 77 S.Ct. at 165.[8]

█ There is no fixed formula for applying the doctrine of primary jurisdiction.

The question is whether the purposes of the doctrine will be served by its application in a particular case. *Id.* Policies underlying the doctrine include the promotion of uniformity and consistency in the regulation of a business entrusted to a particular agency and utilization of an agency's specialized knowledge and insight gained through experience. *See id.* at 64–65, 77 S.Ct. at 165–66; *Southern Pacific Transp. Co. v. San Antonio*, 748 F.2d 266, 272 (5th Cir.1984). Factors which may lead a court to refer a case to the ICC under the primary jurisdiction doctrine include the presence of issues of transportation policy in the case, a finding that resolution of the questions raised by the case will require an acquaintance with the intricate facts of transportation and the presence in the case of complex cost allocation and accounting problems. *See Western Pacific R.R. Co.*, 352 U.S. at 65–66, 77 S.Ct. at 165–66. In determining whether referral to the ICC is warranted, a district court must evaluate the claims of the plaintiff and the defenses of the defendant to ascertain "whether it need[s] to request 'the expert and specialized knowledge' of the ICC as a preliminary step in the resolution'" of the matter. *Occidental Chemical Corp.*, 846 F.2d at 914.

The doctrine of primary jurisdiction has been applied in actions otherwise within the jurisdiction of a court where, as here, a question is raised regarding the reasonableness of a filed tariff or the reasonableness of the tariff as applied. *See Nader v. Allegheny Airlines, Inc.*, 426 U.S. 290, 304, 96 S.Ct. 1978, 1987, 48 L.Ed.2d 643 (1976); *Western Pacific R.R. Co.*, 352 U.S. at 68, 77 S.Ct. at 167. *See also Chicago & North Western Transportation Co. v. Kalo Brick & Tile Co.*, 450 U.S. 311, 325, 101 S.Ct. 1124, 1134, 67 L.Ed.2d 258 (1981) ("The judgment as to what constitutes reasonableness belongs exclusively to the Commission."); *Great Northern R.R. Co.*

---

8. In addition, 28 U.S.C. § 1336(b), which authorizes referral of appropriate issues to the ICC, provides in pertinent part:

> When a district court … refers a question or issues to the [ICC] for determination, the court which referred the question or issue

shall have exclusive jurisdiction of a civil action to enforce, enjoin, set aside, annul, or suspend, in whole or in part, any order of the [ICC] arising out of such referral.

28 U.S.C. § 1336(b).

*v. Merchants Elevator Co.*, 259 U.S. 285, 291, 42 S.Ct. 477, 479, 66 L.Ed. 943 (1922) ("Whenever a rate, rule or practice is attacked as unreasonable ... there must be preliminary resort to the Commission."); *Transtop, Inc.*, 902 F.2d at 106 (reversing district court's denial of referral to ICC of rate reasonableness issue, finding referral would "permit decisionmaking by the expert body" and would "advance, rather than retard, primary jurisdiction policies"); *Pennsylvania R.R. Co. v. United States*, 315 F.2d 460, 465 (3d Cir.) ("[T]he issue of reasonableness of rates charged is one which Congress saw fit to entrust solely to the Commission"), *cert. denied*, 375 U.S. 814, 84 S.Ct. 47, 11 L.Ed.2d 50 (1963). As the Fifth Circuit stated:

> [W]here the reasonableness of a rate is at issue, "there must be preliminary resort to the Commission." The determination of reasonableness "is reached ordinarily upon voluminous and conflicting evidence, for the adequate appreciation of which acquaintance with many intricate facts of transportation is indispensable and such acquaintance is commonly to be found only in a body of experts...." Thus, courts ... refer to the ICC any questions concerning the reasonableness of [a] rate.

*Southern Pacific Transp. Co.*, 748 F.2d at 272 (citations omitted).

In a recent case, the First Circuit reversed a district court's decision denying referral to the ICC of a rate reasonableness issue. In doing so, the court stated it was bound by the Supreme Court's decision in *Western Pacific R.R. Co.*:

> *Western Pacific* itself involved a typical application of the [primary jurisdiction] doctrine. A carrier filed a tariff containing its rates for various types of cargo; the shipper believed that a low rate applied and sued for the difference. The shipper argued that (1) the tariff, properly construed, imposed the lower, not the higher, rate, and (2) *if not*, the tariff's high rate was not "reasonable" as applied to the shipment in question. The Supreme Court held that the district court *could not* find either for the carrier or shipper until the ICC determined *both* questions. In the court's view, the ICC, an expert and experienced body, was better equipped to answer such questions; Congress wanted the ICC to answer questions of this sort; and to permit *courts* to answer these questions independently would threaten the nationwide uniformity of rate that the Interstate Commerce Act sought.

*Transtop, Inc.*, 902 F.2d at 103–04 (emphasis in original). The court concluded: "As *Western Pacific* makes clear, where the 'reasonableness' of the filed rate is at issue in a carrier's rate collection suit, the court should refer the matter to the ICC and apply the ICC's result." *Id.* at 103.

In *Western Transportation Co. v. Wilson & Co.*, 682 F.2d 1227 (7th Cir.1982), a defendant challenged the reasonableness of a tariff in an undercharge suit. The Seventh Circuit stated that the district court did not have the power to declare a notation requirement in the tariff unreasonable and that only the ICC could do so. *Id.* at 1232. The court observed the defendant should have "ask[ed] for a stay of the court proceedings ... [to] ask the [ICC] to declare the notation requirement unreasonable." *Id.* at 1231. The Seventh Circuit stated that upon remand the defendant should be permitted to request a stay of the district court proceedings while it raised the issue before the ICC. *Id.* at 1232.

According to the Seventh Circuit, referral in a rate reasonableness case is not discretionary on the part of a district court. Where a matter, such as rate reasonableness, is within the ICC's primary jurisdiction, the district court has no choice but to refer the matter to the ICC. According to the Seventh Circuit, only the ICC can determine whether particular filed rates are reasonable. *Western Transportation Co.*, 682 F.2d at 1232. *See also Interstate Commerce Comm'n v. Atlantic Coast Line R.R. Co.*, 383 U.S. 576, 579–80, 86 S.Ct. 1000, 1003–04, 16 L.Ed.2d 109 (1966); *General American Tank Car Corp. v. El Dorado Terminal Co.*, 308 U.S. 422, 433, 60 S.Ct. 325, 331, 84 L.Ed. 361 (1940), *reh'g denied*, 309 U.S. 694, 60 S.Ct. 465, 84 L.Ed.

1035 (1940); *Texas & Pacific R.R. Co. v. Abilene Cotton Oil Co.*, 204 U.S. 426, 27 S.Ct. 350, 51 L.Ed. 553 (1907).

■ Nonetheless, in order to merit referral of a matter to the ICC, a shipper must provide more than a bald, conclusory allegation of rate unreasonableness. *See, e.g., Branch Motor Express Co. v. Caloric Corp.*, No. 89–1130, slip op. at 3, 4 (3d Cir. 14 August 1990) [914 F.2d 241 (Table)] (completely unsupported mention of rate unreasonableness was insufficient to warrant referral to ICC, where the only evidence presented was as to the difference between the filed rate and the negotiated rate); *Occidental Chemical Corp.*, 846 F.2d at 914 n. 7 ("We remind counsel that phrasing an issue as a matter of tariff construction or as a question of reasonableness does not determine the issue of primary jurisdiction.... 'To hold otherwise would make the doctrine of primary jurisdiction an abstraction to be called into operation at the whim of the pleader.' The better practice in cases which may warrant referral to the ICC is to attach documentation to the referral motion so that the court has a record on which to act.") (citations omitted); *Covey v. Conagra Inc.*, 758 F.Supp. 644 (D.Colo.1991) (defendant's argument as to rate reasonableness was not distinct from unreasonable practices defense; referral denied because doctrine of primary jurisdiction was not properly invoked by " 'mere fact that the issue is phrased as a matter of [rate] reasonableness' "); *Feldspar Trucking Co. v. Greater Atlanta Shippers Ass'n*, 683 F.Supp. 1375 (N.D.Ga.1987) (court denied referral where defendant made no specific allegations demonstrating filed tariff was unreasonable and the tariff was unambiguous), *appeal dismissed*, 849 F.2d 1389 (11th Cir. 1988); *Delta Traffic Service, Inc. et al. v. Pride Health Care Equipment*, No. 87–0915, slip op. at 3–4 (M.D.Pa. 18 November 1987) (referral denied where defendant raised no legitimate and concrete issues as to the reasonableness of the filed rate).

In the instant case, the Plaintiffs strenuously oppose re-referral of the rate reasonableness issue to the ICC on the ground that, as argued before the bankruptcy court in support of the summary judgment motion, the ICC did not address that issue through the fault of the Defendants and the Defendants should therefore not be given a "second bite at the apple." In addition, the Plaintiffs argue re-referral to the ICC should be denied because the Defendants submitted to the ICC evidence which is inadequate as a matter of law to prevail on their rate reasonableness defense.

■ In a challenge to a filed rate such as is brought in the instant case, the proper test in determining whether referral to the ICC is appropriate under the doctrine of primary jurisdiction is not whether the party requesting referral has submitted sufficient evidence to prevail, as stated by the bankruptcy court. Rather, a party seeking referral to the ICC must substantiate a challenge to the reasonableness of a filed rate so as to render it more than a bare allegation. In the instant case, the Defendants have submitted evidence showing Oneida's filed rates substantially exceeded the rates of Oneida's competitors. It is observed the Defendants are unable to state whether the competitors' rates to which they refer were filed rates. It may therefore be that the Defendants make no more than the tenuous claim that Oneida's filed rates are unfair in comparison to competitors' negotiated rates, rates which were illegal as departing from their filed rates.

It is for the ICC to determine, however, whether the evidence submitted by the Defendants is sufficient for them to prevail on their rate reasonableness defense. The case law amply documents that the determination of the reasonableness of a carrier's filed rate is within the special expertise of the ICC. Referral to the ICC will promote the policies underlying the primary jurisdiction doctrine, including the promotion of uniformity and consistency in rate reasonableness determinations. Evidence that a carrier's rates exceeded the rates of the competition has been found to be sufficient to warrant referral to the ICC under the doctrine of primary jurisdiction. *See, e.g., In re Sharm Express, Inc.*, 122

B.R. 999, 1004–05 (D.Minn.1991) (finding the assertion by a defendant that the plaintiff charged fifty percent more than competitors sufficient to warrant referral to the ICC; the disparity yielded the permissible inference that since competitors were presumably earning a profit at lower rates, plaintiff's rates were unreasonably high); *Campbell 66*, slip op. at 20–21 (the assertion by a defendant that the plaintiff's rates were fifty percent higher than those of the plaintiff's competitors was sufficient to warrant referral to the ICC). The Defendants' evidence submitted to the ICC on their rate reasonableness defense is sufficient to warrant re-referral to the ICC for a determination thereon and the request for re-referral is granted.

The Plaintiffs' argument that the ICC failed to make a determination on the rate reasonableness defense through the fault of the Defendants is well-taken, however. In spite of the limitations in the order of referral, the Defendants took it upon themselves to present an unreasonable practices defense to the ICC. Given the limited order of referral, given that the Defendants were aware the ICC's determination would be an advisory opinion only and given the Defendants were on notice as to the position of both the bankruptcy court and this court on the invalidity of the unreasonable practices defense, the Defendants were or should have been aware of the risk inherent in concentrating primarily on an unreasonable practices defense.

It is therefore presumed the Defendants fully litigated their rate reasonableness defense in the prior proceedings before the ICC. To the extent the Defendants did not do so, such failure was wholly unjustified. The Defendants' reasonable rates defense is referred to the ICC for a determination. However, the parties are hereby limited to relying on the record they created when the case was first before the ICC. The parties are to engage in no further dis-covery on the rate reasonableness question and are precluded from making additional submissions to the ICC.[9] Such a result promotes the policies of the primary jurisdiction doctrine, while minimizing the delay and expense posed to the Plaintiffs as a result of the Defendants' failure to abide by the initial order of referral. In addition, such a result should prove satisfactory to the Defendants, who were content to rest on the record they created in the prior ICC proceedings.[10]

*Conclusion*

The Proposed Findings are not adopted. The Defendants' challenge to the reasonableness of the Plaintiffs' filed rate is referred to the ICC for a determination. The parties are hereby limited to reliance on the record previously submitted to the ICC on that question. The Plaintiffs' summary judgment motion is denied without prejudice and the case is administratively terminated. The case may be reopened and the summary judgment may be refiled, if appropriate, within thirty (30) days of the ICC's determination on the rate reasonableness issue.

**9.** The Defendants failed to abide by the limited order of referral when the case was previously referred to the ICC. They are cautioned that should they fail to follow the instant order of referral by making additional submissions to the ICC, they shall be sanctioned.

**10.** As counsel for the Defendants has expressed on this subject: "Both sides made their factual rate cases before the ICC and I don't think it is necessary to add to the record." *See* 24 April 1990 McWhinney Letter to Steinfeld.